DAVID P. MASTAGNI (SBN 57721)
GRANT A. WINTER (SBN 266329)
**MASTAGNI HOLSTEDT, A.P.C.**
1912 I Street,
Sacramento, California 95811
Telephone: (916) 446-4692
Facsimile: (916) 447-4614
Email: gwinter@mastagni.com

Attorneys for Plaintiff/Counterdefendant,
PAUL VILLAMIZAR

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL VILLAMIZAR,<br><br>　　　　Plaintiff,<br><br>v.<br><br>SENIOR CARE PHARMACY SERVICES INC., SAMITENDU BANERJEE, ARA KEUSGARIAN; and TONY NGUYEN,<br><br>　　　　Defendants.<br><br>―――――――――<br>SAMITENDU BANERJEE<br><br>　　　　Countclaimant,<br><br>v.<br><br>PAUL VILLAMIZAR,<br><br>　　　　Counterdefendant. | Case No.: 2:14-CV-1737-TLN-KJN<br><br>**PLAINTIFF PAUL VILLAMIZAR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT SENIOR CARE PHARMACY SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: September 22, 2022<br>Time: 2:00 p.m.<br>Ctrm: 2, 15th Floor<br>Date Action Filed: 07/23/2014 |

## I.　　INTRODUCTION

Plaintiff/Counterdefendant Paul Villamizar hereby opposes the Motion for Partial Summary Judgement filed by Defendant Senior Care Pharmacy Services, Inc. (hereinafter

"Senior Care"), and submits that the Court should deny the motion in its entirety for the following reasons:

Senior Care's primary argument in support of its Motion for Summary Judgment is that Mr. Villamizar fails to make a prima facie showing that Senior Care was aware Mr. Villamizar was engaging in protected activity before Senior Care abused, harassed, and ultimately terminated him. This is incorrect based upon the evidence, including the evidence Senior Care offers in support of its own ostensible "undisputed facts." Indeed, the evidence raises substantial disputes as to what notice Senior Care had of Mr. Villamizar's complaints.

Mr. Villamizar began working for Senior Care in 2013. The evidence presented with Senior Care's motion and this opposition shows that Villamizar complained about Senior Care's practices and the potential legal/law enforcement exposure and scrutiny that those practices created. The email exchanges that Senior Care submits in support of its Motion for Summary Judgment show that Mr. Villamizar thoroughly explained that those practices violated certain laws – including the Controlled Substances Act, and other laws – and that violation could lead to license revocation and even problems with law enforcement such as the Drug Enforcement Agency. *See, e.g.*, Declaration of Banerjee, Exhibit 9 [email exchange between Villamizar and Banerjee].

By July 23, 2014, Mr. Villamizar had filed this lawsuit. Although the lawsuit was under seal, Mr. Villamizar had repeatedly told his employers that they were violating laws and might be subject to law enforcement and Board of Pharmacy scrutiny. Only a few days after filing the lawsuit, he was attacked in the office of Samitendu Banerjee. Senior Care admits that during that August 2014 meeting, Mr. Villamizar warned Senior Care that its conduct warranted a report to the DEA. Yet, instead of correcting the problems that Mr. Villamizar complained about, Senior Care attempted to buy him off with a "severance agreement," and then punched him in the face and beat him up, and fired him from his employment. Banerjee Decl., ¶ 26.

While the United States of America and the State of California declined to take up Mr. Villamizar's case as a *Qui Tam*, the State of California took notice of the complaint and referred Senior Care, Mr. Banerjee, and others to the California Board of Pharmacy. Judicially noticeable

2

PLAINTIFF PAUL VILLAMIZAR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT SENIOR CARE PHARMACY SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

evidence shows that based on issues nearly identical to those Mr. Villamizar raised – including those discussed in the emails presented in Senior Care's instant Motion for Summary Judgement – Samitendu Banerjee's Pharmacist License was surrendered with a prohibition on applying again within three years. Request for Judicial Notice, No. 2-4. Senior Care's pharmacy privileges were also suspended and the Board ordered that the business be sold. Requests for Judicial Notice, 2-4.

Despite Senior Care's terrible posture in this litigation, it also baldly argues that Mr. Villamizar cannot raise a triable issue as to whether Senior Care's given explanation for its treatment of Mr. Villamizar is "mere pretext." The evidence shows that Mr. Villamizar repeatedly put Senior Care on notice of its illegal conduct and his concern with it. The evidence also shows that there are major disputes about the reason why Villamizar was fired, including inconsistencies in Senior Care's own evidence. For instance, the declarations of Banerjee, Nguyen, and Keushgerian are inconsistent about whether they decided to fire Villamizar in July or August of 2014. *See* Keushgerian Decl., ¶6; Nguyen Decl., ¶6; Banerjee Decl., ¶24. Clearly there are disputed triable issues about why Villamizar was harassed and terminated, and this motion should be denied.

## II. LAW AND ARGUMENT

In a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, the moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All reasonable inferences must be drawn in the light most favorable to the nonmoving party. *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

In context of employment discrimination cases, courts should embrace the value of resolution of a plaintiff's claims by trial to ensure a final determination is made based upon as complete a record as possible. As the Ninth Circuit has explained:

> In evaluating motions for summary judgment in the context of employment discrimination, we have emphasized the importance of zealously guarding an

employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses. As a result, when a court too readily grants summary judgment, it runs the risk of providing a protective shield for discriminatory behavior that our society has determined must be extirpated.

*McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).

**A.   There Are Numerous Disputed Facts Concerning Whether Mr. Villamizar Engaged in Protected Activity.**

In order to put a defendant on notice of a claim for purposes of FCA and CFCA retaliation, a plaintiff need not tell the defendant that they are filing an action – *or a qui tam action* – against them.  In *Mendiondo v. Centinela Hosp. Medical Center,* 521 F.3d 1097, 1105(9th Cir. 2008), the plaintiff merely told the defendant about "possible civil and criminal violations."  Which was sufficient to put the defendant employer on notice that the plaintiff was raising issues of Medicare fraud, and thereby engaging in protected activity.

Contrary to Senior Care's argument, the evidence here show that Mr. Villamizar was not held to a higher standard as a "fraud alert employee."  His job was not to investigate, and even more importantly, the investigative processes which Senior Care set up for the managerial employees to use was not even utilized. Villamizar's declaration states that the system used for reporting errors and abnormalities was not even used by Senior Care (except when it was employed as a means of retaliation).  Villamizar Decl., ¶ 3.  Reporting and discussing errors or abnormalities amounting to illegal conduct was completely outside of the normal practice at Senior Care.   Villamizar Decl., ¶ 3.  For example, a prescription received on July 23, 2013 was so unclear that it could not reasonably be filled and that filling it might have subjected Villamizar and Senior Care to legal and licensing liability.  Eventually another pharmacist filled this order and it went out, but only after Cecelia and Tony overrode Villamizar's decision not to fill it. This shows that no one in the Senior Care facility besides Villamizar was concerned with – let alone complained about legal liability or regulatory compliance.  Villamizar Decl., ¶ 24-25.  The other

pharmacists and staff simply did not care and it would have raised substantial red flags when Paul Villamizar began complaining about legal violations.

In *Fanslow v. Chicago Mfg. Center, Inc,* 384 F.3d 469, 483–484 (7th Cir. 2004) in that case, the district court erroneously held the plaintiff, Fanslow, to the heightened notice standard that is reserved for employees who are charged with discovering fraud in the normal course of their job duties. The employee was not responsible for reporting fraud as part of his normal duties, and thus, he needed not tell the employer he was instituting an action.  It was sufficient protected activity to tell the employer their conduct was "unallowable."  Notably, the court explained that even for a "fraud alert" employee, saying terms like "illegal" and "unlawful" is sufficient to put the employer on notice of protected activity. *Id*.

Here the evidence here shows that at Senior Care, the pharmacists like Mr. Villamizar, were specifically discouraged from doing anything other than what would accomplish their primary jobs the fastest and improve "productivity."  Mr. Banerjee even implemented a time tracking system with specific minute-by-minute time limits to track each task, including "filling controlled meds" – 2 minutes, "controlled meds paperwork" – 1 minute; "Supervising Rx Staff" – 15 minutes per 8-hour shift.  Villamizar Decl., ¶ 4.

Thus, despite the assertion in Mr. Banerjee's declaration that Mr. Villamizar was responsible for quality assurance, quality assurance was actually a nuisance to Senior Care which viewed it as a hinderance to productivity.  The other pharmacist did not bring issues concerning the law, licensing, or the DEA to Senior Care's attention, because it was not a part of the job of a pharmacist there.  Thus, it is not true that Mr. Villamizar's invocation of those laws and warnings would have been too little to put Senior Care on notice that he was contemplating more severe action like a legal action.

In fact, Villamizar repeatedly put his employer on notice of his complaints of illegal liability-inducing conduct.  For example, In the spring of 2014, Villamizar notified Senior Care management, including but not limited to Tony Nguyen about Mai Trans' illegal restocking of C2s, but nothing was done.  Villamizar Decl., ¶ 16.

1      Through the second half of his employment at Senior Care, up to summer 2014,
2 Villamizar had raised concerns repeatedly about technicians such as Cecilia Ou, who was not
3 licensed as a pharmacist, having final say on clinical and pharmacy decisions.  A technician does
4 not have a license to act alone on these decisions and is supposed to be supervised by a
5 pharmacist.  Villamizar Decl., ¶ 17-19.
6      Villamizar spoke with Mr. Banerjee about how the non-pharmacists legally should not be
7 making managerial and clinical decisions.  These conversations occurred throughout the late
8 winter and early spring 2014 through his eventual termination.  Villamizar Decl., ¶ 17-19.  He
9 had also raised concerns about improperly restocking, reselling and swapping different forms of
10 drugs, overbilling and double-billing for drugs, and improperly dispensing and storing C-2
11 narcotics.  Villamizar Decl., ¶ 17-19.
12      On or about June 5, 2014 Senior Care received a titration prescription for Methadone for
13 patient "SD".  The June 5, 2014 titration prescription for Methadone was defective and could not
14 be filled even if someone would have called the prescribing doctor for clarification.  There were
15 numerous reasons why it was incurably defective, but among those reasons was the fact that there
16 was no valid date of the prescription written by the doctor.  This was a defect that could not be
17 cured by a phone call. Additionally, there was no DEA number on the prescription, which was a
18 defect that could not be cured by a phone call.  Subsequently in an email exchange with Mr.
19 Banerjee, Villamizar explained the reasons that the prescription was invalid, and specifically
20 mentioned the violations of the Controlled Substances Act, the potential legal exposure, and the
21 other consequences that could result, including problems with law enforcement and regulatory
22 enforcement such as the Drug Enforcement Agency and the California Pharmacy Board.
23 Villamizar Decl., ¶ 20-22.
24      On or about July 23, 2014, Cecilia Ou allegedly reported that Villamizar had refused to
25 complete the initial check on an emergency order for morphine for a patient whose initials were
26 "JS."   Villamizar believed that the prescription of received on July 23, 2013 was so unclear that
27 it could not reasonably be filled and that filling it would subject him and Senior Care to legal and
28

licensing liability. Eventually another pharmacist filled this order and it went out, but only after managers Cecelia and Tony overrode Villamizar's decision. Villamizar Decl., ¶ 24-25.

Mr. Villamizar was discharged because he had refused to dispense invalid C2 prescriptions, restock returned medication, and do other illegal conduct, and because he had brought this conduct to the attention of Senior Care. Villamizar Decl., ¶ 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26.   Mr. Villamizar had repeatedly complained of Senior Care's illegal conduct and had discussed potential involvement with the DEA and Board of Pharmacy. Emails attached to Mr. Banerjee's declaration show that Mr. Banerjee even argued with Mr. Villamizar about whether Senior Care's policies would lead to exposure from the DEA or Board of Pharmacy. Exhibit 9 to Banerjee Declaration.

On December 12, 2013, Villamizar refused to fill a C2 prescription because the triplicate was invalid, which was a defect that rendered the prescription unfillable under the law and Board of Pharmacy regulations. Mr. Nguyen objected to that decision, and overrode the decision and, processed the order and did the final check and gave the medication to manager Ara Keushgerian. Villamizar discussed this at length with Mr. Banerjee and he knew that a non-pharmacist manager illegally filled this prescription. Villamizar Decl., ¶ 8.

On May 28, 2014, on Rx# 26076383, a Potassium order was written for 20mg powder packet. Mr. Banerjee wanted to switch the powder for a tablet because it was more lucrative. Villamizar confronted Mr. Banerjee about the switch and told him it was illegal. Villamizar Decl., ¶ 9.

On May 12, 2014, Nikki Nguyen was going through the C2 log book and adjusting entries. Villamizar asked her to not adjust any of his entries and stated that it should only be pharmacists working with entries in the C2 log book as is mandated by pharmacy law. Manger Tony Nguyen was present when he discussed this issue. Villamizar Decl., ¶ 10.

On May 15, 2014, Villamizar complained that refusing to turn on the air conditioning would lead to liability for dispensing adulterated medication after the temperature had reached 82 degrees. Villamizar Decl., ¶ 11.

On July 30, 2014, Villamizar had objected to the switching/swapping of a medication for a patient who was on antipsychotic medications for increased profit to the pharmacy. He raised concerns with Cecelia Ou, who was a manager at that point, and on or around this date he spoke with Mr. Banerjee about the issue. Villamizar told him that he did not feel comfortable switching a patient on antipsychotics for billing purposes. Villamizar Decl., ¶ 12.

On August 14, 2014, employee, Lindsay, emailed saying that a patient's medication type should be switched. It was illegal to switch without doctor approval. There was no approval, and the switch was not properly documented or warranted, so Villamizar responded that the switch could not be made. Lindsay then took the issue to Tony Nguyen, who is not a pharmacist, who overrode Villamizar's judgment and made the switch, which was illegal medication swapping. Villamizar Decl., ¶ 13.

In the spring of 2014, after noticing Ms. Tran restocking returned C2 medication, Villamizar discussed this with her and told her he thought it was an illegal practice in violation of the Controlled Substances Act and Board of Pharmacy regulations. Villamizar notified Senior Care management, including but not limited to Tony Nguyen about Mai Trans' illegal restocking of C2s, but nothing was done. Villamizar Decl., ¶ 14-15.

**B.     There Are Ample Disputed Facts Showing That Senior Care's Reasons for Terminating, Harassing, and Retaliating Against Mr. Villamizar Are Mere Pretext**

One way that a Plaintiff may prove that the defendants' alleged non-discriminatory reasons are actually a pretext, is by directly showing that unlawful discrimination more than likely motivated the employer. *Chuang v. University of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1127(9th Cir. 2000). Alternatively, the plaintiff may use either direct or circumstantial evidence to show that the protected characteristic was a motivating factor in the challenged employment decision. Once the plaintiff has made this showing, "the burden of proof shifts to the employer to prove affirmatively that the same decision would have been made even if the employee had not engaged in protected activity." *Fanslow*, *supra*, 384 F.3d 469, 485.

Notably, the evidence submitted by Senior Care contradicts itself in regard to when and why the decision was made to terminate Villamizar. These contradictions – all by themselves –

are sufficient to show triable issues as to why Villamizar was fired, raising a clear indication of pretext. Banerjee claimed he decided to fire Villamizar in August 2014 after a second complaint from Cecelia Ou. Banerjee Decl., ¶ 24. Declarations of Tony Nguyen and Ara Keushgerian contradict this claimed fact. Nguyen and Keushgerian allege that they met with Senior Care management in July 2014 – before the alleged August 2014 Ceclia Ou "Incident Report," and that a decision was made to terminate Villamizar during that July meeting. Keushgerian Decl., ¶6; Nguyen Decl., ¶6.

In *Fanslow*, the employee/plaintiff refused to undertake a course of conduct in furtherance of the employer's fraudulent conduct, and thereafter within a short period of time, the employer put the employee on a performance improvement plan. *Fanslow*, *supra*, 384 F.3d 469, 486. The court held the temporal proximity between the two events was sufficient to create triable issues to overcome a motion for summary judgment.

Here, Senior Care admits it counseled and punished Mr. Villamizar for refusing to undertake illegal conduct. Villamizar Decl., ¶ 6; Banerjee Decl. at ¶ 22; Ex. 13. For example, Banerjee admits he counseled Mr. Villamizar at Starbucks for refusing to fill C2 orders, even though those orders were so defective the reason Villamizar refused to fill them is because a phone call could not cure them. Banerjee Decl. at ¶ 22, Villamizar Decl., ¶ 20-22.

Similarly, Senior Care was clearly going out of its way to retaliate against Villamizar using all tools at its disposal, even tools it rarely used at all. For example, although the QAR process was almost never used, Senior Care invoked it against Villamizar for an issue that did not even qualify for QAR review. Villamizar Decl., ¶ 3, 6.

Other employees, like manager Cecilia Ou, took direct harassing action against Villamizar when he refused to fill illegally defective C2 prescriptions. Ms. Ou went so far as to write a false complaint of harassment against Mr. Villamizar when he refused to fill a prescription that was defective. Villamizar Decl., ¶ 24-25.

\\\

\\\

\\\

PLAINTIFF PAUL VILLAMIZAR'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT SENIOR CARE PHARMACY SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### III. CONCLUSION

The foregoing are just a few examples of protected activity and the resulting retaliation endured by Mr. Villamizar. As demonstrated by the evidence and as set forth in the separate statements, there are numerous material issues in dispute. This motion should be denied in its entirety.

Dated: August 22, 2022              **MASTAGNI HOLSTEDT, A.P.C.**

                                    By: _____/s/ *Grant Winter*_____
                                        GRANT A. WINTER
                                        Attorneys for Plaintiff/Counter defendant
                                        Paul Villamizar