UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL VILLAMIZAR,<br><br>Plaintiff,<br><br>v.<br><br>SENIOR CARE PHARMACY SERVICES, INC., et al.,<br><br>Defendants. | No. 2:14-cv-01737-DAD-KJN<br><br>ORDER DENYING DEFENDANT SENIOR CARE PHARMACY SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(Doc. No. 128) |

This matter is before the court on the motion for partial summary judgment filed on behalf of defendant Senior Care Pharmacy Services, Inc. ("Senior Care") on August 8, 2022. (Doc. No. 128.) The pending motion was taken under submission by the previously assigned district judge on August 23, 2022.[1] (Doc. No. 138.) For the reasons explained below, defendant Senior Care's motion for partial summary judgment will be denied.

**PROCEDURAL BACKGROUND**

On July 23, 2014, plaintiff Paul Villamizar filed a complaint under seal against defendant Senior Care and defendant Samitendu Banerjee ("Banerjee"), the sole owner of defendant Senior Care, for *qui tam* causes of action brought under the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, and the California False Claims Act ("CFCA"), California Government Code

---

[1] On August 25, 2022, this case was reassigned to the undersigned. (Doc. No. 139.)

1

1  §§ 12650, *et seq.* (Doc. No. 1.) On October 21, 2016, plaintiff filed the operative first amended
2  complaint ("FAC") also under seal, in which plaintiff names defendant Senior Care managers Ara
3  Keusgarian and Tony Nguyen as additional defendants and asserts the following eight additional
4  individual claims against all defendants: (1) assault; (2) battery; (3) intentional infliction of
5  emotional distress; (4) negligent infliction of emotional distress; (5) wrongful termination in
6  violation of public policy; (6) whistleblower retaliation in violation of California Government
7  Code § 12653; (7) *qui tam* retaliation in violation of 31 U.S.C. § 3730(h)(1); and (8) violence and
8  intimidation in violation of California Civil Code § 51.7. (Doc. No. 29 at 44–64.) On July 15,
9  2019, after the intervenor-plaintiffs United States of America and State of California declined to
10 intervene in this case (Doc. Nos. 63, 65), the court unsealed the original complaint and FAC,
11 among other filings. (*See* Doc. No. 66.)

12 On August 22, 2019, pursuant to plaintiff's notice of voluntary dismissal of the *qui tam*
13 claims, the court dismissed those claims. (Doc. No. 70.) On February 7, 2022, the court
14 dismissed plaintiff's fifth, sixth, and seventh claims as to all defendants except defendant Senior
15 Care and dismissed plaintiff's eighth claim as to all defendants. (Doc. No. 114.) Therefore, this
16 case proceeds only on plaintiff's first, second, third, and fourth claims against all defendants and
17 his fifth, sixth, and seventh claims against defendant Senior Care.

18 In the FAC, plaintiff alleges several ways in which defendant Senior Care violated the
19 FCA and CFCA, including that defendant Senior Care offers financial inducements to skilled
20 nursing facilities ("SNFs") on its Medicare Part A business in the form of: (1) steeply discounted
21 *per diem* rates; (2) steeply discounted prices for drugs; and (3) free drugs in order to gain the
22 SNFs' full-priced Medi-Cal and Medicare Part D business. (Doc. No. 29 at 20–21.) Plaintiff
23 alleges that this practice constitutes the payment of illegal kickbacks and that the claims for
24 reimbursement submitted by defendant Senior Care to federal Medicare and TRICARE programs
25 pursuant to this arrangement constitute false claims under the FCA, and the claims for
26 reimbursement submitted by defendant Senior Care to Medi-Cal constitute false claims under the
27 CFCA. (*Id.* at 20–21, 39–42.) Plaintiff alleges that when a new patient is admitted into an SNF
28 that is serviced by defendant Senior Care, employees of defendant Senior Care will assume the

patient is a *per diem* patient and switch the prescribed medication to a less expensive drug. (*Id.* at ¶ 106.) However, when the patient's insurance turns out to be Medi-Cal or Medicare Part D, the employees allegedly change the prescribed medication to one that is in the same class but will yield the company greater profits. (*Id.*) Plaintiff alleges that by supplying therapeutically similar but higher-priced drugs yielding greater profit margins, defendant Senior Care overcharges the federal government and the State of California in violation of the FCA and CFCA. (*Id.* at ¶ 111.)

On August 8, 2022, defendant Senior Care filed a motion for partial summary judgment in its favor on plaintiff's fifth claim of wrongful termination, sixth claim of retaliation in violation of CFCA, and seventh claim of retaliation in violation of the FCA. (Doc. No. 128.) On August 23, 2022, plaintiff filed an opposition to the pending motion and a request for judicial notice. (Doc. No. 137, 136-2.)[2] On August 26, 2022, defendant Senior Care filed a reply in support of its motion for summary judgment. (Doc. No. 141.) Defendant Senior Care also concurrently filed an opposition to plaintiff's request for judicial notice. (Doc. No. 141-1.)

/////
/////
/////
/////
/////
/////
/////

---

[2] Plaintiff also concurrently filed a request pursuant to Rule 56(d)(2) of the Federal Rules of Civil Procedure for additional time to allow him to "take discovery and/or obtain additional affidavits" and six specific depositions in order to oppose defendant Senior Care's motion for summary judgment. (Doc. No. 137-3 at 1–4.) Defendant Senior Care opposed that request. (Doc. No. 141-2.) However, plaintiff and defendant Senior Care subsequently stipulated to continue the discovery cut-off dates in this case, specifically stating both parties believed that "significant time and expense can be saved by waiting to conduct depositions *until after* the Court rules on the pending Motion for Partial Summary Judgment." (Doc. Nos. 142 at 2–3; 144 at 2–3) (emphasis added). By so stipulating, plaintiff appears to have now indicated that he did not need additional discovery in order to adequately oppose defendant Senior Care's motion for summary judgment. In any event, because the court will deny defendant Senior Care's motion for partial summary judgment for the reasons explained below, plaintiff's Rule 56(d)(2) request is rendered moot.

3

# FACTUAL BACKGROUND[3]

At all relevant times, defendant Senior Care was an independently owned provider of pharmaceutical infusion therapy, enteral nutrition, and consulting services to long-term care facilities in California. (DUF ¶ 2.) Defendant Banerjee was the sole owner, president, and chief pharmacist of defendant Senior Care. (DUF ¶ 3.) Defendant Senior Care operated pharmacies at several locations in California, including at 4950 Fulton, Fairfield, CA 94534 ("Fairfield Pharmacy"). (DUF ¶ 4.) Plaintiff worked at will as a pharmacist at the Fairfield Pharmacy from May 8, 2013 to August 15, 2014. (DUF ¶¶ 5, 6.) On August 15, 2014, defendant Banerjee and senior managers, defendants Keusgarian and Nguyen, met with plaintiff and informed him that he was being terminated from his position, effective immediately. (DUF ¶¶ 31, 32.)

Defendant Senior Care and plaintiff dispute the reason plaintiff was fired. Defendant Senior Care asserts that plaintiff's employment was terminated "based solely on his deficient performance at work and harassment complaints by female coworkers." (DUF ¶ 33.) Specifically, on May 15, 2014, Mai Tran, one of plaintiff's female co-workers, complained to defendant Banerjee about what she perceived as a hostile work environment created by plaintiff and his unprofessional behavior towards her. (DUF ¶ 16.) On July 30, 2014, defendant Banerjee received another incident report lodged by Cecilia Ou concerning allegedly hostile behavior on the part of plaintiff. (DUF ¶ 26.) Defendant Banerjee received yet another incident report on August 14, 2014 by Ou concerning plaintiff's hostile behavior. (DUF ¶ 28.) According to defendant Senior Care, "[a]fter meeting with senior managers to discuss the August 2014 Cecilia Ou Incident Report, Banerjee, on behalf of Senior Care Fairfield, decided to terminate [plaintiff]

---

[3] The relevant facts that follow are undisputed unless otherwise noted and are derived from the defendant Senior Care's statement of undisputed facts and responded to by plaintiff (Doc. No. 137-1 at 2–20 ("DUF")), as well as the disputed facts as stated by plaintiff (Doc. No. 137-1 at 20–25 ("PDF")), to which defendant did not respond. In addition, although plaintiff purports to dispute many of the facts stated in defendant Senior Care's statement of undisputed facts, he does so by repeating the fact and adding additional information to elaborate on his own version of the events. (*See, e.g.*, DUF ¶¶ 16, 26, 28.) In other words, plaintiff does not actually dispute the fact or portions thereof, he merely provides additional factual information that he believes is relevant. Thus, where plaintiff has not genuinely disputed a fact or a portion of that fact, the court has treated that fact as undisputed for the purposes of ruling on the pending motion for summary judgment.

for repeatedly making medication errors, harassing female employees and creating a hostile work environment." (DUF ¶ 30.)

According to plaintiff, however, he was fired because "he had refused to dispense invalid [schedule II] prescriptions, restock returned medication, and do other illegal conduct, and because he had brought this conduct to the attention of Senior Care." (DUF ¶ 33.) Under plaintiff's version of the events, his co-workers Tran and Ou complained about him after he reported their errors and unlawful behavior to Banerjee and Senior Care management, including Tran's unlawful restocking of schedule II medications and Ou's unlawful switching of medications. (Doc. No. 137-5 at ¶¶ 16, 25; DUF ¶¶ 26, 28, 29.)

As to plaintiff's deficient work performance, defendant Senior Care maintains that plaintiff's medication errors was a reason for terminating his employment. For example, on or around June 5, 2014, defendant Banerjee learned that plaintiff had refused to fill a prescription. (DUF ¶ 18.) According to defendant Banerjee,

> [plaintiff] explained that his decision was based on clerical errors in the prescription and his concern the drug was being prescribed for detoxification purposes, not for pain relief as indicated by the doctor. I advised that standard procedures required him to contact the physician to ascertain the validity of the order and to clear up any confusion. By doing nothing, [plaintiff], in my opinion, used poor judgment and failed to exercise due care.

(Doc. No. 130 at ¶ 16.)

Plaintiff tells a different story as to this incident. In his declaration, plaintiff explains that after receiving a titration prescription for Methadone, he immediately telephoned defendant Banerjee and told him that the prescription was unfillable for several reasons due to the defects on the written prescription. (Doc. No. 137-5 at ¶ 20.) According to plaintiff, during that call, defendant Banerjee told plaintiff, "OK, leave it on my desk and I'll deal with it soon, I'll be in soon." (*Id.*) Plaintiff attests that he followed defendant Banerjee's instructions and put the prescription on his desk. (*Id.*) Plaintiff states that he then "moved onto other tasks because [defendant Banerjee] said he would deal with it, and because there was substantial pressure from Senior Care for pharmacists to increase work output and avoid bottlenecks." (*Id.*)

/////

Next, on or around June 10, 2014, defendant Banerjee received a report that plaintiff had failed to fill another prescription for pain medication, resulting in a complaint from the hospital after the patient attempted suicide. (DUF ¶ 20.) According to defendant Banerjee, as "[t]he pharmacist on duty, [plaintiff] was supposed to contact the doctor and get the medication switched from MS Contin to Kadian." (Doc. No. 130 at ¶ 17.) Because plaintiff told defendant Banerjee that he "called Dr. Goyal but couldn't reach him," defendant Banerjee requested phone logs to verify that plaintiff had in fact tried to reach the doctor. (*Id.* at ¶ 18.) In reviewing those phone logs, defendant Banerjee states that no outbound calls were made to Dr. Goyal or his office. (*Id.*) According to defendant Banerjee, this incident "demonstrated once again that [plaintiff] was careless, that he refused to accept responsibility for his actions." (*Id.* at ¶ 19.)

Again, plaintiff tells a different story as to the incident—that he was not the only pharmacist on duty, and thus he was not the only pharmacist responsible for filling the prescription. (Doc. No. 137-5 at ¶ 23.) Plaintiff declares that he did call the doctor, and the call logs attached to the declaration of defendant Banerjee reflect outbound calls on June 5 and 6, 2014, not Saturday, June 7, 2014, which is the day plaintiff remembers working.[4] (*Id.*; *see also* Doc. No. 130-10 at 6–13.)

According to plaintiff, defendant Senior Care was aware that he "had repeatedly complained of Senior Care's illegal conduct and had discussed potential involvement with the DEA and Board of Pharmacy." (DUF ¶ 35.) Plaintiff internally complained about various purported illegal activities taking place at Senior Care, including confronting defendant Banerjee in May 2014 regarding his switching of medications illegally to increase profit (PDF ¶ 2), confronting defendant Senior Care's management, including defendant Nguyen, regarding Tran's unlawful restocking of schedule II substances (PDF ¶ 7), and raising his concerns to defendant Banerjee on July 30, 2014 about Ou's swapping of antipsychotic medication for purposes of increasing the profit to the company (PDF ¶ 4).

/////

---

[4] As noted below, the court will take judicial notice that June 7, 2014 was a Saturday.

6

**LEGAL STANDARD**

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

In summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment . . . is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits or

7

1  admissible discovery material in support of its contention that the dispute exists.  *See* Fed. R. Civ.
2  P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773
3  (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for
4  summary judgment.").  The opposing party must demonstrate that the fact in contention is
5  material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the
6  dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the
7  non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986).

8  In the endeavor to establish the existence of a factual dispute, the opposing party need not
9  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
10 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
11 trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).
12 Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in
13 order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (citations
14 omitted).

15 "In evaluating the evidence to determine whether there is a genuine issue of fact," the
16 court draws "all inferences supported by the evidence in favor of the non-moving party."  *Walls v.*
17 *Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's
18 obligation to produce a factual predicate from which the inference may be drawn.  *See Richards*
19 *v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902
20 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than
21 simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record
22 taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no
23 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 586–87 (citations omitted).

**ANALYSIS**

**A.      Plaintiff's Request for Judicial Notice**

26 Pursuant to Federal Rules of Evidence 201(b), a court may "judicially notice a fact that is
27 not subject to reasonable dispute because it:  (1) is generally known within the trial court's
28 /////

8

1  territorial jurisdiction; or (2) can be accurately and readily determined from sources whose

2  accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

3       In support of his opposition to the pending motion, plaintiff requests that the court take

4  judicial notice of a decision and order of the Board of Pharmacy, as well as two website pages of

5  the Board of Pharmacy. (Doc. No. 137-2.) These documents purport to show that defendant

6  Banerjee and defendant Senior Care's licenses were cancelled in November 2021. (*Id.*) Plaintiff

7  also asks the court to take notice that June 7, 2014 was a Saturday. (*Id.*)

8       Defendant Senior Care does not object to the court taking judicial notice that June 7, 2014

9  was a Saturday. The court will take judicial notice of this fact. *See* Fed. R. Evid. 201(b); *Fisher*

10  *v. United States*, No. 14-cv-6499-DOC-KES, 2016 WL 11520616, at *2 (C.D. Cal. Nov. 23,

11  2016) (taking judicial notice that October 16, 2016 was a Sunday).

12       Defendant Senior Care has filed objections to plaintiff's request for judicial notice of the

13  Board of Pharmacy documents, arguing that those documents are irrelevant to the resolution of

14  the pending motion for summary judgment. (Doc. No. 141-1.) As the party requesting judicial

15  notice, plaintiff "bears the burden of persuading the trial judge that the fact is a proper matter for

16  judicial notice." *Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, at 516 (E.D.

17  Cal. 2011). Despite this burden, plaintiff does not explain the relevance of these documents or

18  why they are helpful to the court in adjudicating the pending motion. A court may decline to take

19  judicial notice of irrelevant documents. *See Santa Monica Food Not Bombs v. City of Santa*

20  *Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d

21  386, 392 n.7 (9th Cir. 2000). Because plaintiff has failed to carry his burden of demonstrating the

22  relevancy of these documents to the court's consideration of the pending motion, the court

23  declines to take judicial notice of these documents. *See Roadrunner Intermodal Servs., LLC v.*

24  *T.G.S. Transp., Inc.*, No. 1:17-cv-01207-DAD-BAM, 2019 WL 1400093, at *4 (E.D. Cal. Mar.

25  28, 2019) (declining to take judicial notice of a document that was irrelevant to the motion

26  pending before the court).

27       Accordingly, the court will take judicial notice that June 7, 2014 was a Saturday.

28  However, plaintiff's request for judicial notice will otherwise be denied.

**B.     Defendant Senior Care's Motion for Partial Summary Judgment**

       1.     <u>FCA and CFCA Whistleblower Retaliation</u>

Defendant Senior Care seeks summary judgment in its favor on both of plaintiff's whistleblower retaliation claims. (Doc. No. 134 at 13.)

The FCA and CFCA protect "whistleblowers" from retaliation by their employers for engaging in protected activities. The FCA provides relief for employees who are "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h); *see also* Cal. Gov't Code § 12653(a) (providing relief for employees who are "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of that employee's . . . employment because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop one or more violations of this article"). Because the CFCA is modeled after the federal FCA, California courts have recognized that federal decisions addressing the federal FCA are persuasive in determining the meaning of the CFCA. *See, e.g.*, *State of California v. Altus Fin.*, 36 Cal. 4th 1284, 1299 (2005) ("[T]he CFCA 'is patterned on similar federal legislation' and it is appropriate to look to precedent construing the equivalent federal act."). Moreover, neither defendant Senior Care nor plaintiff distinguish plaintiff's state and federal retaliation claims in their respective briefing on the pending motion. (*See generally*, Doc. Nos. 134, 137, 141.) Accordingly, the court will analyze plaintiff's FCA and CFCA retaliation claims together.

In reviewing employees' claims that their employers have engaged in whistleblower retaliation in violation of FCA, district courts in the Ninth Circuit generally rely on the three-part burden-shifting framework enunciated by the Supreme Court in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973), though "[t]he Ninth Circuit has not expressly applied the *McDonnell-Douglas* framework to FCA claims." *Lillie v. ManTech Int'l. Corp.*, No. 2:17-cv-02538-CAS-SS, 2018 WL 6133706, at *7 (C.D. Cal. Sept. 24, 2018); *see also Sears v. Hous.*

*Auth. of the Cnty. of Monterey*, No. 11-cv-1876-LHK, 2014 WL 1369594, at *7 (N.D. Cal. Apr. 7, 2014); *Dunlap v. Imaging Assocs., LLC*, No. 3:14-cv-00143-TMB, 2019 WL 4580611, at *22 (D. Alaska Sept. 20, 2019). This court will likewise apply the *McDonnell Douglas* burden-shifting analysis here.

Under this framework, the plaintiff must first establish a *prima facie* case by showing that all requisite elements of their FCA retaliation claim have been met. *McDonnell Douglas*, 411 U.S. at 802. The evidentiary burden to establish a *prima facie* case "on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994). A plaintiff only needs to produce "very little" evidence that "gives rise to an inference of unlawful" retaliation. *Id.* (citations omitted). If the plaintiff satisfies its burden, the defendant must "articulate some legitimate, nondiscriminatory reason for the employee's" adverse employment action. *Id.* If the defendant articulates a non-retaliatory basis for its adverse employment action, the plaintiff must then show that "the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1126–27 (9th Cir. 2009). "To make this showing of pretext, [plaintiff] may rely on the evidence proffered in support of his prima facie case." *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112–13 (9th Cir. 2003).

      a.    *Step One:  Prima Facie Case*

Here, defendant Senior Care argues that plaintiff cannot make a *prima facie* showing that his employment was terminated in retaliation for whistleblowing. (Doc. Nos. 134 at 15.) The elements of a whistleblower retaliation claim are: (1) the employee must have engaged in conduct protected under the FCA; (2) the employer must have known that the employee was engaging in such conduct; and (3) the employer must have retaliated against the employee because of his or her protected conduct. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). The court will address whether plaintiff has made a *prima facie* showing as to each of these elements in turn.

i.         Protected Activity

Under the FCA, protected activity is defined as "lawful acts done . . . in furtherance of an action under [the FCA] or other efforts to stop 1 or more violations of [the FCA]." 31 U.S.C. § 3730(h)(1). Internal reporting is protected under § 3730(h)(1) if it relates to the submission of false claims. *See U.S. ex rel. Lupo v. Quality Assurance Servs., Inc.*, 242 F. Supp. 3d 1020, 1028 (S.D. Cal. 2017) ("Relator was not required to specifically communicate an intention to bring an FCA action; section 3730(h) protects other steps, as well, including internal reporting."); *Uehling v. Millennium Lab'ys, Inc.*, No. 3:16-cv-02812-L-MDD, 2018 WL 2149312, at *3 (S.D. Cal. May 10, 2018) ("[G]oing directly to the president of a company to complain of fraudulent claims would, in theory at least, seem to be amongst the most effective actions an employee could take to bring an end to the practice.").

Here, plaintiff has detailed various internal complaints he made to management that were reasonably perceived to involve purported violations of the FCA and CFCA, including the restocking of returned schedule II medications and the switching of medications for ones more lucrative for defendant. On July 30, 2014—approximately two weeks before he was fired—plaintiff complained to defendant Banerjee about Ou's alleged illegal switching of a medication for a patient who was on antipsychotic medications motivated by increasing profit to the pharmacy. The court finds that a reasonable jury could conclude based upon this evidence that plaintiff engaged in protected activity by confronting defendant Banerjee and senior management of his company on July 30, 2014 and other occasions with concerns that these practices were illegal. *See Uehling*, 2018 WL 2149312, at *3 (holding that a reasonable jury could conclude that the plaintiff engaged in protected activity by "confronting the president of his company on two separate occasions with concerns that Millennium's practice of billing the government for unnecessary testing was not legal").

ii.        Knowledge of the Protected Activity

Next, defendant Senior Care argues that it did not have knowledge of plaintiff's engagement in protected activity. (Doc. Nos. 134 at 15; 141 at 3.)

/////

When "monitoring and reporting activities . . . are by-and-large the types of activities [an employee] was required to undertake as part of his job," for example, "when an employee is tasked with . . . investigations" of allegedly fraudulent activity, "it takes more than an employer's knowledge of that activity to show that an employer was on notice of a potential *qui tam* suit." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 908 (9th Cir. 2017).

In the pending motion, defendant Senior Care argues that plaintiff's "concerns or disclosures to management were part of his normal duties as a licensed pharmacist" and therefore it would not have been put on notice from plaintiff's expressed concerns or disclosures to management. (Doc. No. 134 at 16.) In opposition, plaintiff argues that "[h]is job was not to investigate." (Doc. No. 137 at 4.) Indeed, there is no evidence before the court on summary judgment that plaintiff was tasked with reporting potential fraud as part of his job. Accordingly, the court is not persuaded by defendant Senior Care's unsupported argument in this regard. Defendant Senior Care also contends that "[plaintiff] could not even produce a document showing that Senior Care was aware of any complaints [plaintiff] made to any government agencies." (Doc. No. 134 at 15.) This argument is also unavailing because, as discussed above, it is undisputed on summary judgment that plaintiff complained to defendant Banerjee and senior management at Senior Care regarding both the illegal switching of medications to increase profit to the pharmacy and the unlawful restocking of schedule II substances. Based on this undisputed evidence, a reasonable fact finder could find that defendant Senior Care was aware of plaintiff's engagement in protected activity. *See Mendiondo*, 521 F.3d at 1104 ("Because Mendiondo complained to [the CEO] about the suspected civil violations, [the defendant] was informed of Mendiondo's protected activity."); *Uehling*, 2018 WL 2149312, at *3 (denying summary judgment after finding that there was a dispute as to whether the employer knew about the plaintiff's protected activity because "if Plaintiff complained of fraud on the government directly to Defendant's president, it follows that Defendant would have been aware of Plaintiff's engagement in protected activity when it fired him"); *United States v. Porifera Inc.*, No. 19-cv-00765-HSG, 2022 WL 2158967, at *5 (N.D. Cal. June 15, 2022) (denying the defendants' motion for summary judgment, finding that the plaintiff may have engaged in protected activity where

the plaintiff "presented evidence that he looked into and raised concerns that Porifera was intentionally changing timesheets to bill work to government projects that employees did not actually perform, thus defrauding the government").

In sum, plaintiff has come forward with sufficient evidence to make a *prima facie* showing that defendant Senior Care had knowledge of his engagement in protected activity.

### iii. Causal Connection

Finally, plaintiff must make a *prima facie* showing of a causal connection between his protected activity and the adverse employment action. Causation may be inferred "from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002); *see also Bell v. Clackamas Cnty.*, 341 F.3d 858, 865 (9th Cir. 2003) ("Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases.").

In its reply, defendant Senior Care argues that plaintiff has failed to make a *prima facie* showing that defendant Senior Care retaliated against him due to his protected activities. (Doc. No. 141 at 3.) The court disagrees. Plaintiff has shown a causal link between his complaint to defendant Banerjee about a potential FCA/CFCA violation on July 30, 2014 and his termination on August 15, 2014—a mere few weeks later. Given the short period of time between his complaint and his termination, a reasonable juror could infer that plaintiff's complaint triggered his subsequent discharge. *See Villiarimo*, 281 F.3d at 1065 (citing *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 505 (9th Cir. 1989), *as amended on denial of reh'g and reh'g en banc* (Sept. 19, 1989) (finding a *prima facie* showing of causation where the plaintiffs were fired 42 and 52 days after their alleged protected activity)); *see also Bagley v. Bel-Aire Mech. Inc.*, 647 F. App'x 797, 800 (9th Cir. 2016)[5] (finding that an African–American employee-plaintiff had made a *prima facie* showing of causation in an action alleging a retaliatory lay off that occurred 36 days after his discrimination complaint).

---

[5] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

14

         b.     *Step Two: Non-Retaliatory Reasons for the Adverse Employment Decision*

Given plaintiff's establishment of a *prima facie* case of retaliation under the FCA, defendant Senior Care must now show legitimate, non-retaliatory reasons for its adverse employment decision. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). This burden is met where defendant offers "admissible evidence sufficient for the trier of fact to conclude that petitioner was fired because of" defendant's stated legitimate reasons. *Id.* Here, defendant Senior Care has produced the declaration of defendant Banerjee, accompanied by supporting documentation, in which he explains that he fired plaintiff because of the reports of harassment by plaintiff's female co-workers and plaintiff's repeated medication-related errors. (*See* Doc. No. 130 at ¶ 24.) This production of evidence satisfies defendant Senior Care's burden at step two.

         c.     *Step Three:  Plaintiff's Showing of Pretext*

Because defendant Senior Care has proffered a legitimate, non-retaliatory reason for plaintiff's discharge, plaintiff must submit evidence from which a reasonable jury could infer that defendant Senior Care terminated plaintiff's employment in retaliation for his protected activities rather than for those stated non-retaliatory reasons.

Plaintiff can demonstrate that defendant Senior Care's proffered reasons for firing him are pretextual "either directly by persuading the court that [the retaliatory] reason [for the decision] more likely motivated [defendant Senior Care] or indirectly by showing that [defendant Senior Care's] proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981). While circumstantial evidence offered to make this showing must be "specific" and "substantial," *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1222 (9th Cir. 1998), the Ninth Circuit has clarified that "a plaintiff's burden to raise a triable issue of pretext is hardly an onerous one." *France v. Johnson*, 795 F.3d 1170, 1175 (9th Cir. 2015), *as amended on reh'g* (Oct. 14, 2015).

Here, the court concludes that plaintiff has presented sufficient circumstantial evidence to raise a genuine dispute of fact as to defendant Senior Care's actual motivation for terminating his

employment. *See Miller*, 797 F.2d at 732–33 ("[A]n employer's true motivations are particularly difficult to ascertain thereby making such factual determinations generally unsuitable for disposition at the summary judgment stage.") (citations omitted); *Lowe v. City of Monrovia*, 775 F.2d 998, 1009 (9th Cir. 1985), *amended*, 784 F.2d 1407 (9th Cir. 1986) ("Once a *prima facie* case is established either by the introduction of actual evidence or reliance on the *McDonnell Douglas* presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits . . . ."). As to the medication errors, defendant Senior Care and plaintiff have each presented the court with competing versions of events in "he-said, she-said" style declarations, with each party pointing their finger at the other as the cause for those medication errors. "If anything, such a back and forth suggests that there *is* a substantial issue of fact to resolve at trial." *N. v. Rosenoff*, No. 16-cv-02829 NC, 2017 WL 2728615, at *1 (N.D. Cal. Feb. 23, 2017). As to the complaints about plaintiff made by two female co-workers, a reasonable trier of fact could find that defendant Senior Care was actually motivated by plaintiff's act of reporting his suspicions to management that these co-workers were engaging in practices violating the FCA and CFCA. Additionally, as noted above, plaintiff has proffered evidence of the temporal proximity between his complaint to defendant Banerjee regarding what he suspected was an FCA violation by Ou on July 30, 2014 and his termination two weeks later. *See Sears*, 2014 WL 1369594, at *10 (stating that "close temporal proximity between the employee's termination and employee's whistleblowing" can give rise to an inference of pretext). Considering this evidence with all inferences therefrom drawn in favor of the non-movant, the court concludes that plaintiff has shown that genuine disputes of material fact exist. Specifically, it is genuinely disputed whether the reason defendant Senior Care proffered—plaintiff's medication errors and behavior towards his female colleagues—was a pretext and whether defendant Senior Care's true motive for terminating plaintiff's employment was his whistleblowing activity.

Accordingly, the court will deny Senior Care's motion for partial summary judgment in its favor as to plaintiff's FCA and CFCA claims.

/////

### 2. Wrongful Termination in Violation of Public Policy

Defendant Senior Care also moves for partial summary judgment in its favor as to plaintiff's claim of wrongful termination in violation of public policy, sometimes referred to as a *Tameny* claim. *See Tameny v. Atl. Richfield Co.*, 27 Cal. 3d 167, 176 (1980). Under California law, "an employer's right to discharge an at-will employee is subject to limits that fundamental public policy imposes." *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 71 (1998). "[A]t-will employees may recover tort damages from their employers if they can show they were discharged in contravention of fundamental public policy." *Id.* To support such a *Tameny* claim, the public policy implicated must be: "(1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." *City of Moorpark v. Superior Ct.,* 18 Cal. 4th 1143, 1159 (1998) (citation omitted). Here, "the FCA is a delineated statutory provision, it is public, it was well established at the time of Plaintiff's discharge, and it is substantial and fundamental." *Hill v. Booz Allen Hamilton, Inc.*, No. 07-cv-00034, 2011 WL 6000501, at *13 (D. Guam Nov. 16, 2011).

To prevail on his wrongful termination claim, plaintiff must prove that: (1) defendant Senior Care employed him, (2) defendant Senior Care discharged him, (3) the alleged violation of public policy was a motivating reason for discharge, and (4) the discharge caused him harm. *Haney v. Aramark Unif. Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004). Here, it is undisputed that defendant Senior Care employed plaintiff and discharged him. Furthermore, as discussed above, there is a genuine dispute as to whether plaintiff's engagement in protected whistleblowing activity was a motivating reason for his discharge. Thus, for similar reasons, the court concludes that a reasonable jury could find that plaintiff's employment was terminated in violation of public policy. Accordingly, the court will also deny defendant Senior Care's motion for partial summary judgment in its favor on plaintiff's state law claim of wrongful termination in violation of public policy.

/////

/////

**CONCLUSION**

For the reasons explained above,

1. Plaintiff's request for judicial notice (Doc. No. 137-2) is granted in part and denied in part, as follows:

    a. The court takes judicial notice that June 7, 2014 was a Saturday; and

    b. The court otherwise denies plaintiff's request for judicial notice;

2. Plaintiff's request for additional time (Doc. No. 137-3) is denied as having been rendered moot by this order;

3. Defendant Senior Care's motion for partial summary judgment (Doc. No. 128) is denied; and

4. In addition, the court now sets a Status Conference on June 27, 2023 at 1:30 p.m. before District Judge Dale A. Drozd by Zoom. The parties shall submit a joint status report seven days before the Joint Status Conference addressing their proposed schedule for the remainder of the case, including the final pretrial conference and trial.[6]

IT IS SO ORDERED.

Dated:  **May 23, 2023**                                  /s/ Dale A. Drozd
                                                          UNITED STATES DISTRICT JUDGE

---

[6] The court notes that on May 17, 2023, by stipulation and order the discovery deadline in this case was extended to September 30, 2023 and the date for designation of any experts was extended to November 30, 2023. The court is unclear whether the extension of these dates, approved at the request of the parties, in the view of the parties impacts other dates (such as close of law and motion) in addition to the jury trial and final pretrial conference dates. Along with proposed trial and final pretrial conference dates, the parties are directed to address this question in their joint status report.